IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

CASE NO.: 1:20-cv-00230-REB-KLM

| | |
|---|---|
| STEVE TAGUE,<br><br>    Plaintiff,<br><br>v.<br><br>MIND ROCKET, LLC,<br><br>    Defendant. | CIVIL ACTION NO.:<br><br>1:20-cv-00230-REB-KLM |

## MOTION TO SET ASIDE CLERK'S DEFAULT AND FOR LEAVE TO ANSWER THE COMPLAINT AND MEMORANDUM IN SUPPORT

Defendant Mind Rocket, LLC, pursuant to Federal Rule of Civil Procedure 55 and D.C.COLO.LCiv.R.7.1, by and through undersigned counsel, respectfully moves the Court to set aside the Clerk's Entry of Default entered on January 6, 2021 and to permit it to file an Answer to Plaintiff's Complaint,[1] and in support, states the following:

### I. FACTUAL BACKGROUND

Plaintiff Steve Tague is a photographer who filed the instant action against Defendant Mind Rocket, LLC on January 28, 2020, alleging a single count for copyright infringement of two photographs taken by Tague. *See generally* (ECF No. 1). Nearly four

---

[1] Defendant intends to file as an additional or as a supplemental exhibit to this Motion, an Answer and Affirmative Defenses pleading by no later than the close of business on Tuesday, April 20, 2021. Given that counsel was just retained and appeared in this matter yesterday, on April 15, 2021, counsel is diligently working with Defendant to substantively respond to the allegations in the Complaint. But given the urgency and timing, and to avoid a default ruling by the Court, Defendant believed this filing was necessary (sooner rather than later).

months after filing suit, and amidst the global Covid-19 pandemic, Tague served Mind Rocket via certified mail on May 20, 2020 and filed proof of service on May 29, 2020. (ECF No. 13). After several attempts, Tague sought entry of clerk's default on December 29, 2020, which he obtained on January 6, 2021. (ECF No. 31, 32). After receiving an extension of time, Tague filed a Motion for Default Judgment with the court on February 19, 2021, which is presently pending. (ECF No. 36).

Mind Rocket, is a technology start-up based in Colorado Springs, Colorado. *See* Declaration of Dr. Michael Larson ("Larson Decl.") at ¶8. Unrepresented by counsel, and confounded by Plaintiff's copyright claims, Mind Rocket's owner, Dr. Michael Larson, initially thought the instant lawsuit was a scam or solicitation. *Id.* at ¶11.[2] Mind Rocket has never before been sued for any intellectual property violation. *Id.* at ¶10. Dr. Larson is certainly sensitive to, and respects, the rights of intellectual property and their ownership, having gone through extensive patent litigation over certain patents that Dr. Larson himself owns and was involved in. *Id.* at ¶9.

Moreover, during the pendency of this lawsuit, Defendant's business faced significant financial strain due to the global Covid-19 pandemic and was forced to reduce its workforce to a single employee—himself—after laying off all others. *Id.* at ¶12. At one time, Mind Rocket had nine employees. *Id.* at ¶12. At the end of 2019, financial issues necessitated that Mind Rocket move out of its rented facility and sublet to an unaffiliated company. *Id.* at ¶13. Mind Rocket counted on the tenant to hold any mail for it until the

---

[2] Plaintiff's counsel, Mr. Rothman, is no stranger to filing copyright lawsuits. Indeed, a quick Pacer search of public court dockets revealed that between January 2019 through April 2021 alone, Plaintiff's counsel has filed over 250 lawsuits. (LexisNexis Pacer search attached hereto as **Exhibit A**).

lease ended in mid-2020. *Id.* Managing the logistics of this situation alone was daunting. *Id.* During the timeframe Tague cites as when service was made, and a response was expected – Mind Rocket believes this partly coincided with these business interrupts, and when, he himself, tested positive for COVID-19. *Id.* at ¶14. All of Dr. Larson's family members were sick and debilitated in the late 2020 timeframe, including Dr. Larson's 99 year-old, live in mother-in-law whom he and his family had tried very hard to shield from the virus for many months. *Id.*

Finally, it took Mind Rocket a few months to determine whether it had an insurance policy that could be implicated in its defense in the litigation, and Mind Rocket could not independently afford legal representation. *Id.* at ¶15. Dr. Larson received a FedEx notice related to the case on or about February 24, 2021, and he contacted Mind Rocket's insurance carrier the very next day. *Id.* at ¶¶16-17. Mind Rocket learned for the first time on Tuesday, April 13, 2021 that its defense would be covered by insurance and that Lewis Brisbois LLP was asked to consider potential representation. *Id.* at ¶25. As of Thursday, April 15, 2021, Mind Rocket was notified that Lewis Brisbois LLP would represent it. *Id.* at ¶25. The same day, undersigned counsel filed an appearance in this matter. (ECF No. 38).

Based on the facts and law set forth below, the clerk's entry of default must be set aside.

## II. LEGAL ARGUMENT

### A. Defendant Can Show Good Cause to Set Aside Default

Critically, "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c) (Setting Aside

3

Default or Default Judgment). Whether to set aside entry of default is within the sound discretion of the court. *Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). "[T]he good cause standard required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." *Kahler v. Wal-Mart Stores, Inc.*, No. 20-cv-01536-WJM-KMT, 2020 U.S. Dist. LEXIS 2334163, at *6 (D. Colo. Dec. 14, 2020) (citation and quotations omitted).

The non-exhaustive factors the Court should consider are: (1) whether the default was the result of culpable conduct of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant presents a meritorious defense. This determination is liberal and is guided by the strong preference that courts dispose of cases on their merits, and not by default. *See, e.g., Zen & Art of Clients Server Computing, Inc. v. Res. Support Assocs.*, No. 06-cv-00239-REB-MEH (D. Colo. June 15, 2006) (citing Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970) ("[T]he preferred disposition of any case is upon its merits and not by default judgment.")). Thus, inadvertence is sufficient to set aside default under Rule 55(c). *Id.*

Here, because of the confluence of hurdles Mind Rocket faced in answering the complaint and obtaining counsel to represent it in this litigation, all three factors evidence good cause to set aside the clerk's entry of default.

1. **Defendant Did Not Act Culpably**

Mind Rocket did not act willfully or deliberately in failing to answer the complaint. Instead, this was the result of an honest, good-faith mistake by Defendant. Larson Decl. at ¶26. Mind Rocket had never before been sued for copyright infringement, or any other

4

intellectual property violation, though its owner is keenly aware of intellectual property rights given that he holds at least ten patents and has had to protect his own rights. *Id.* at ¶¶9-10. As a result, Mind Rocket did not believe that a lawsuit for copyright infringement was real, as opposed to a scam. *Id.* at ¶11. Indeed, Dr. Larson was not aware of Plaintiff, Plaintiff's counsel, any of Plaintiff's photograph images, or how they involved Mind Rocket. *Id.* at ¶11.

This conclusion was bolstered by Dr. Larson's inquiry as to the alleged "copyright infringement." Specifically, in connection with its website, Mind Rocket is accused of infringing the copyrights Plaintiff holds in two photographs. *See generally* (ECF No. 1). These two photographs may have been somehow placed unintentionally on Mind Rocket's website by a former employee who obtained them from a website called Pexels, which holds itself out as a "free to users" source, providing free photos and videos. *Id.* at ¶18. Specifically, the Pexels homepage expressly states that it offers "[t]he best free stock photos & videos shared by talented creators." *Id.* at ¶19 & Ex. A thereto. The "License" section of the website also represents that all photos and videos can be downloaded and used for free, without the need for attribution (though appreciated), and that content may be modified or edited. *Id.* at ¶19 & Ex. A thereto.

Upon receiving notice of the alleged copyright infringement, Mind Rocket immediately took the images off its website, and Dr. Larson went on the Pexels website to investigate. *Id.* at ¶¶20-21. He uncovered that although the two photographs at issue here were previously available for download on the Pexels website, they had curiously been removed. *Id.* at ¶21. Upon contacting Pexels, Dr. Larson was informed that Plaintiff's

photographs had been permanently deleted from Pexels, but that they could still be used and that the license granted by Pexels had not been revoked. *Id.* at ¶22.

Further as is the case with many small businesses nationwide, Mind Rocket was significantly hampered on many fronts during the Covid-19 pandemic. *Id.* at ¶¶12-14. As a result of insurmountable financial strain, Mind Rocket was forced to downsize and lay off all employees, except Dr. Larson, who became the lone individual responsible for running the entire business. *Id.* at ¶12. For context, Mind Rocket previously had nine employees at one time, and Dr. Larson was forced to subsume all those roles. *Id.* at ¶12. Financial issues forced Mind Rocket to evacuate its leased office space at the end of 2019 and to sublet it, and it relied on the tenant to hold its mail until the lease ended in mid-2020. *Id.* at ¶31. In November and December 2020, Dr. Larson and all members of his family contracted Covid-19 and were sick and debilitated, including his 99-year old mother-in-law, who resides with him. *Id.* at ¶14. These facts alone support finding good faith. *See, e.g.*, *Kahler*, 2020 U.S. Dist. LEXIS 234163, at *7 (finding that due to reduction in staff because of Covid-19 pandemic, administrative oversight in calendaring complaint and assigning case to outside counsel showed conduct was not willful and intent to defend the case).

During the same time period, the Court was similarly operating under unique parameters and in a constrained manner based on the Covid-19 pandemic. For example, in District Court General Order 2020-10 issued on June 15, 2020 continued all trials through July 31, 2020, subject to further order of the presiding judicial officer. In what appears to be Court's latest order related to Covid-19, District Court General Order 2021-3 issued on February 12, 2021, similarly orders that "effective March 1, 2021, all civil and

6

criminal jury trials scheduled to commence before any district or magistrate judge in any courthouse in the District of Colorado are CONTINUED subject to further order of the presiding judicial officer…."

Finally, it took Dr. Larson time to determine whether insurance was available to fund the litigation, given that Mind Rocket could not afford counsel on its own because of its precarious financial position. *Id.* at ¶15. On or about February 24, 2021, upon receiving a Federal Express notice about the instant action and recognizing that the lawsuit was not a scam or solicitation, Mind Rocket realized the gravity of the situation. *Id.* at ¶16. Mind Rocket acted promptly to remedy the situation: the very next day, on or about February 25, 2021, Dr. Larson contacted his insurer, HISCOX Insurance Company, to alert it of the claim and to seek coverage to defend against this lawsuit. *Id.* at ¶17. On April 13, 2021, Mind Rocket learned, after waiting for over six weeks for a determination, that defense counsel was asked to acknowledge representation via its carrier. *Id.* at ¶¶17, 25. Over a business day later, Dr. Larson was notified of Mind Rocket's representation by Lewis Brisbois LLP. *Id.* at ¶25.

## 2.  Setting Aside Default Will Result in No Prejudice to Plaintiff

Plaintiff will suffer no prejudice from the default being set aside. The allegedly infringing images were removed after receiving Plaintiff's notice of infringement. Prejudice occurs when a party's "ability to pursue the claim has been hindered … [by, for example] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Elmer v. All Around Roustabout, LLC*, No. 15-cv-00601-RM-KLM, 2015 U.S. Dist. LEXIS 146127, at *12 (D. Colo. Oct. 7, 2015) (noting

7

that mere delay is not prejudice) (citations and quotations omitted). Nor is increased cost of litigation considered prejudice. *Kahler*, 2020 U.S. Dist. LEXIS 234163, at *8.

None of those circumstances occurred here. Plaintiff has not presented any evidence or support of any continuing or ongoing harm. See, e.g., *Esbin & Alter, LLP v. Sabharwal, Globus, & Lim, LLP*, 403 F. App'x 591, 593 (2d Cir. 2010) ("[W]e find the record below insufficient to conclude that [plaintiff] Esbin & Alter would face irreparable harm absent injunctive relief. It appears no evidence was submitted to the district court regarding Esbin & Alter's loss of market share or clients following [defendant] Sabharwal, Globus, & Lim's acquisition and use of the allegedly infringing software. Moreover, we are unable to locate any other evidence in the record establishing a connection between any alleged competitive harm Esbin & Alter might suffer, or has suffered, and Sabharwal, Globus, & Lim's use of the software."). The lack of threat of continuing or future infringement weighs against any prejudice. *See, e.g., Clifton v. Pearson Education, Inc.*, 2012 WL 1565236, at *9 (N.D. Cal. May 2, 2012) (denying preliminary injunction in copyright photography case as, *inter alia*, plaintiff's allegations of "continuing or future infringement [was] insufficient to establish irreparable harm"); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 321, 329 (E.D. Penn. 2012) (denying injunctive relief as defendant was "no longer printing the textbooks involved in this litigation" that had included plaintiff's copyrighted photographs, which plaintiff had argued went beyond the scope of the parties' license for which the photographs "could be displayed"); *Bean v. Pearson Education, Inc.*, 2011 WL 1211684, at *3 (D. Ariz. Mar. 30, 2011) (denying injunctive relief as Plaintiff failed to satisfy its

burden of proving "how future infringements" such as "loss of market share, competitive disadvantage, or intangible harm" would result in irreparable harm).

Further, to date, little work has occurred in the action, except for Plaintiff moving for default. Upon instituting this case, Plaintiff waited several months to initially move for default. After several failed attempts, Plaintiff obtained clerk's entry of default on January 6, 2021. (ECF No. 32). Counsel then received an extension of time in which to file for default with the court, ultimately filing the Motion on February 19, 2021. (ECF No. 36).

Moreover, given the strong policy preference of resolving cases on their merits, it is not prejudicial to require Plaintiff to prove the allegations in his complaint and justify the high award of damages he seeks. *See, e.g.*, *Zen & Art of Clients Server Computing, Inc. v. Res. Support Assocs.*, No. 06-cv-00239-REB-MEH (D. Colo. June 15, 2006) (citing Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970) ("[T]he preferred disposition of any case is upon its merits and not by default judgment.")).

### 3. Defendant Will Present Meritorious Defenses

The third and final factor also supports setting aside the clerk's default. As described above, Mind Rocket reasonably believed that the initial filings it received pertaining to this lawsuit were a scam, given that it receives a number of solicitations by mail. Larson Decl. at ¶¶10-11. Dr. Larson also held the belief that Plaintiff's photographs may have been obtained with authorization from a third-party website, from the Pexels website, which offers free photos and videos without the need for attribution. *Id.* at ¶¶18-19 & Ex. A thereto. Upon receiving notice, Mind Rocket immediately took the two images off its website. *Id.* at ¶20.

9

Further, Dr. Larson went on the Pexels website to investigate. *Id.* at ¶21. He uncovered that although the two photographs at issue here were previously available for download on the Pexels website, they had been removed. *Id.* at ¶¶21-22. Dr. Larson followed up with Pexels, who confirmed that although Plaintiff's photographs had once been available for use through Pexel, that Plaintiff's photographs had been permanently deleted. *Id.* at ¶¶22-23. Pexels went even further, informing Dr. Larson that the photographs could still be used and that the license granted by Pexel had not been revoked. It is possible Mind Rocket can invoke an implied license or third-party license defense.

In light of the foregoing, the clerk's entry of default should be set aside so Mind Rocket may defend itself in the lawsuit and present any applicable defenses, including responding to Plaintiff's disproportionately high claims for damages (despite no finding that Mind Rocket acted willfully).

### B. Plaintiff's Disproportionate Request For $150,000 in Statutory Damages For the Minor Alleged Use Each of the Two Photographs is a Trolling Tactic That the Court Should Not Allow.

Courts are becoming increasingly skeptical of the type of specious, astronomically high six-figure damages claimed in copyright infringement suits similar to what Plaintiff seeks here. Plaintiff's request for six-figures based upon limited, questionable use of short-term images are clearly disproportionate to any actual harm or damages reasonably incurred. *See, e.g.*, *Otto v. Hearst Communs.*, 2017 Civ. 04712, 2020 U.S. Dist. LEXIS 12246, at *12-14 (S.D.N.Y. Jan 23, 2020) (holding "[t]he protection of copyright is an important value, but there is little benefit to the copyright law in rewarding [plaintiff] for prolonging litigation in pursuit of an unjustifiably inflated claim" where the plaintiff, is not,

10

and has never been, a professional photographer and has never been in the business of licensing photographs made a "particularly puzzling" settlement demand for $125,000 for the use of his image which was published on Defendants' website); *McDermott v. Monday Monday, LLC*, No. 17cv9230 (DLC), 2018 U.S. Dist. LEXIS 184049, at *9 (S.D.N.Y. Oct. 26, 2018) (denying plaintiff's counsel's motion to redact the term "copyright troll" from the court's prior order and noting, "as evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this district, it is undisputable that Mr. Liebowitz is a copyright troll."); Ben Depoorter, COPYRIGHT ENFORCEMENT IN THE DIGITAL AGE: WHEN THE REMEDY IS THE WRONG, 66 UCLA L. REV. 400, 439 (2019) (finding that "[although 80 percent of plaintiffs in all disputes claim they suffered conduct that constitutes willful infringement, courts only consider enhanced damages to be justified in just 2 percent of cases where a plaintiff wins the case"). Plaintiff's egregious monetary request is not proportionate to the likely facts at hand.

## CONCLUSION

For the reasons set forth above, Defendant Mind Rocket, LLC respectfully moves the Court to set aside the clerk's entry of default and to allow Defendant to answer the Complaint so that the case can proceed on the merits.

11

### D.C.COLO.LCiv.R.7.1 CERTIFICATION

Undersigned counsel did communicate via telephone with one of Plaintiff's counsel of record regarding the instant Motion, but could not obtain any consent.

Respectfully submitted this <u>16th</u> day of <u>April,</u> 2021.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Jonathan D. Goins*
JONATHAN D. GOINS
Ga. Bar. 738593
NAMRATA JOSHI
Fl. Bar. 105267 (pro hac pending)

Bank America Plaza
600 Peachtree Street NE
Suite 4700
Atlanta, Georgia 30308
404-991-2160 – Telephone
404-467-8845 – Facsimile
Jonathan.Goins@lewisbrisbois.com
Namrata.Joshi@lewisbrisbois.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Jonah A. Grossbardt
SRIP LAW – LOS ANGELES
8730 Wilshire Boulevard
Suite 350
Beverly Hills, CA  90211
jonah.grossbardt@sriplaw.com

William S. Wenzel
RED ROAD LEGAL, PLC
7650 East Kenyon Avenue
Denver, CO  80237
wsw@wswlegal.com

Joel B. Rothman
SRIP LAW – BOCA RATON
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
joel.rothman@sriplaw.com

*Attorneys for Plaintiff*

Respectfully submitted this 16th day of April, 2021.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Jonathan D. Goins*
JONATHAN D. GOINS

*Counsel for Defendant*